UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY LEE GRIFFITH,

   *Plaintiff*,

*v*.                                                                  CASE NO. 12-CV-10575

COMMISSIONER OF                           DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,                          MAGISTRATE JUDGE CHARLES E. BINDER

   *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

#### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability Insurance Benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 13, 18.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff was 55 years of age at the time of the most recent administrative hearing. (Tr. at 52.) Plaintiff's employment history shows that Plaintiff was a home care worker for one year, a laborer for two years, a supervisor in computer manufacturing for nine years, and a receptionist for two years. (Tr. at 113.) Plaintiff filed the instant claim on September 25, 2009, alleging that she became unable to work on June 30, 2001. (Tr. at 106.) The claim was denied at the initial administrative stage. (Tr. at 71.) In denying Plaintiff's claims, the Commissioner found there were no diagnoses established to provide possible bases for disability. (*Id.*) On June 1, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Brenton L. Rogozen, who considered the application for benefits *de novo*. (Tr. at 11-22; 48-70.) In a decision dated July 19, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on August 30, 2011. (Tr. at 5-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 30, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On February 9, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

2

Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,*

3

486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements on December 31, 2006, and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 30, 2001, through her date last insured of December 31, 2006. (Tr. at 13.) At step two, the ALJ found that Plaintiff's hypertension, migraines, and vertigo were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 13-14.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a supervisor, a printed circuit board assembler and a receptionist. (Tr. at 17-18.) Alternatively, at step five, the ALJ found that Plaintiff could perform a full range of medium work. (Tr. at 14-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

**E.     Administrative Record**

**1.     Prior to December 31, 2006**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for migraine headaches and dizziness or vertigo since 2001. (Tr. at 172-281, 282-383, 623-32.)

On September 21, 2002, Plaintiff's physician noted that Plaintiff was working "as a house cleaner." (Tr. at 192.) X-rays of Plaintiff's thoracic spine taken on October 8, 2002, were "[n]ormal[.]" (Tr. at 378.) Plaintiff fell and injured her knee in December 2003. (Tr. at 350-51.) X-rays of Plaintiff's right and left knees taken on December 8, 2003, were "[n]egative[.]" (Tr. at 376.)

Plaintiff was examined by Jolene Key, M.D., at the Center for Orthopedic Surgery on October 5, 2004. After examining x-rays and blood test results, Dr. Key found evidence of degenerative disc disease at the L5-S1 level, but the tests were otherwise normal; the doctor recommended that Plaintiff "resume exercise including stretching and aerobic exercise." (Tr. at 348-49, 608-09.)

X-rays of Plaintiff's thoracic spine taken on March 4, 2005, were "normal[.]" (Tr. at 369.) A CT scan of Plaintiff's brain performed on April 9, 2005, was "[u]nremarkable[.]" (Tr. at 368.) Plaintiff participated in physical therapy in 2005 and was discharged with goals met and a good prognosis. (Tr. at 393-402, 677-83.)

On September 6, 2005, Plaintiff was examined by Eric Sargent, M.D., who concluded that Plaintiff had "dizziness that is not easily classifiable as central (possibly related to migraine) or peripheral (possibly related to a variant of Meniere's syndrome)." (Tr. at 346.) Dr. Sargent noted that Plaintiff did "not have the hearing loss typical of Meniere's syndrome and many of the other symptoms that she has are not typical of Meniere's syndrome as well. I am suspicious that her dizziness may in fact currently be part of an aura of migraine." (*Id.*) Dr. Sargent was "also suspicious that some of her dizziness may be related to the Dyazide she is taking since she did have a drop in her blood pressure upon standing from a supine position. I've recommended she stop the Dyazide for now since it is being used to treat her 'Meniere's disease.'" (*Id.*)

X-rays of Plaintiff's legs taken on January 16, 2006, were "normal[.]" (Tr. at 363, 637.) X-rays taken on September 7, 2006, showed "degenerative discogenic changes at the lumbosacral junction." (Tr. at 359, 633.) X-rays of Plaintiff's cervical spine were "negative[.]" (Tr. at 360, 634.)

Plaintiff was treated with prescription medication for back pain, knee pain, and shoulder pain from 2001 to 2006 by Drs. McClellan and McCowan at Richmond Family Practice. (Tr. at 408-643.) On June 2, 2006, Dr. Sargent noted that Plaintiff was experiencing "[p]robable migraine-related dizziness." (Tr. at 601.)

**2. After December 31, 2006**

On January 20, 2009, a myocardial rest/stress tomography was normal. (Tr. at 748.) On February 4, 2009, Plaintiff was diagnosed by Beth Bowling, M.D., with "[b]ordeline hypertension." (Tr. at 746.)

On July 24, 2009, Plaintiff underwent an electrocochleography ("ECOG") study which was "[n]ormal[.]" (Tr. at 721, 778.) On July 29, 2009, MRIs of Plaintiff's brain and auditory canals

7

were normal and there were "[n]o findings to support vestibular schwannoma at this time." (Tr. at 722.) On August 15, 2009, a CT exam of Plaintiff's thorax showed an "area of poor enhancement . . . which may represent a nodule," but was "otherwise unremarkable." (Tr. at 719-20.) On August 18, 2009, an electronystagmography ("ENG") showed "[m]ild right beating nystagmus with eyes closed in the supine and head right positions [which] suggests a nonlocalizing lesion" and "[r]ight caloric weakness suggest a right peripheral lesion." (Tr. at 723, 776.)

Plaintiff was examined by Julie Burnham, D.O., on August 18, 2009. Dr. Burnham noted a "history of Meniere's disease with an event July 13, 2009, of associated syncope" and a "remote history of migraine without aura"; she recommended additional testing. (Tr. at 728.)

Plaintiff also participated in physical therapy from July through August of 2009. (Tr. at 753-66.) On September 2, 2009, Dr. Burnham was "not able to find any primary neurologic etiology for [Plaintiff's] symptoms" and had "no recommendations for additional diagnostic studies at this time." (Tr. at 774.)

In her Daily Function Report, Plaintiff indicated that she babysits for her grandchildren, does not generally need any assistance with personal care, does not need reminders, prepares complete meals on a daily basis, does cleaning and laundry, goes outside on a daily basis, walks, drives and rides in cars, shops in stores for an hour at a time once a week, handles finances, watches television, does photography, socializes in person and on the phone on a daily basis, and attends the sporting events of her grandchildren. (Tr. at 135-38.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to return to her past relevant work as a supervisor, printed circuit board assembler, and receptionist. (Tr. at 17.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we

8

will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a full range of medium work. (Tr. at 14-17.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even

9

where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erroneously gave substantial weight to Dr. Grodan, a consultative medical expert who testified at the hearing via telephone, rather than Plaintiff's treating physicians. (Doc. 13 at 4, 10-12.) Plaintiff also contends that the ALJ failed to consider medical evidence after the date last insured, specifically evidence that Plaintiff was diagnosed with Meniere's disease in 2009, even though Plaintiff's symptoms "were consistent with Meniere's disease." (*Id.* at 4, 12-13.) Finally, Plaintiff argues that she was denied a fair and impartial hearing because during the medical expert's testimony, the audio and video were out of sync. (*Id.* at 4, 13-14.)

I suggest that the ALJ's findings were supported by substantial evidence. In order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c), (d). "If a clamant is no longer insured for disability insurance benefits at the time [he] files [his] application, [he] is entitled to disability insurance benefits only if [he] was disabled before the date [he] was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the ALJ generally only considers evidence from the alleged disability onset date through the date last insured. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). In order for evidence of the plaintiff's condition after the date last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

I suggest that the evidence gathered in 2009 has not been shown to relate back to the question of disability ending December 31, 2006. Even if the evidence were considered, I suggest that substantial evidence nonetheless would support the ALJ's decision.

Prior to December 31, 2006, the evidence shows that Plaintiff was treated for migraine headaches and dizziness or vertigo. (Tr. at 172-383, 623-32.) Nonetheless, Plaintiff was able to work as a house cleaner during 2002. (Tr. at 192.) Although many x-rays were taken, the x-rays of Plaintiff's thoracic and cervical spine were consistently normal. (Tr. at 360, 369, 378, 634.) Even after Plaintiff fell and injured her knee in December 2003, x-rays of Plaintiff's right and left knees taken on December 8, 2003, were "[n]egative[.]" (Tr. at 350-51, 376.) CT scans of Plaintiff's brain were also "[u]nremarkable[.]" (Tr. at 368.) Although Plaintiff was diagnosed with degenerative disc disease at the L5-S1 level in 2004, Dr. Key recommended that Plaintiff "resume exercise, including stretching and aerobic exercise." (Tr. at 348-49, 608-09.) Plaintiff participated in physical therapy in 2005 and was discharged with goals met and a good prognosis. (Tr. at 393-402, 677-83.) The cause of Plaintiff's dizziness was deemed to be "not easily classifiable" and Dr. Sargent noted that Plaintiff did "not have the hearing loss typical of Meniere's syndrome"; even after 2009, no hearing loss was found. (Tr. at 346, 721, 778.) As of June 2, 2006, Dr. Sargent noted that Plaintiff was experiencing "[p]robable migraine-related dizziness." (Tr. at 601.)

Medical evidence dated after December 31, 2006, showed only that Plaintiff was diagnosed by Dr. Bowling with "[b]ordeline hypertension." (Tr. at 746.) An ECOG study was "[n]ormal[.]" (Tr. at 721, 778.) MRIs of Plaintiff's brain and auditory canals were normal (Tr. at 722) and an ENG showed "[m]ild right beating nystagmus with eyes closed in the supine and head right positions." (Tr. at 723, 776.) Although Dr. Burnham noted a "history of Meniere's disease with an event July 13, 2009, of associated syncope," (Tr. at 753-66) she was "not able to find any primary neurologic etiology for [Plaintiff's] symptoms" and had "no recommendations for additional diagnostic studies at this time." (Tr. at 774.)

There is no opinion evidence from any treating, examining or other medical source supporting a finding of disability. Finally, I suggest that the ALJ's RFC analysis was in harmony

11

with the objective record medical evidence and Plaintiff's own statements that she babysits for her grandchildren, does not generally need any assistance with personal care, does not need reminders, prepares complete meals on a daily basis, does cleaning and laundry, goes outside on a daily basis, walks, drives and rides in cars, shops in stores for an hour at a time once a week, handles finances, watches television, does photography, socializes in person and on the phone on a daily basis, and attends the sporting events of her grandchildren. (Tr. at 135-38.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, I suggest that the ALJ's decision is supported by substantial evidence and should be upheld.

I also suggest that this result is not undermined by Plaintiff's complaints regarding the lack of synchronization between the audio and visual components of the medical expert's testimony at the administrative hearing. Although Plaintiff complains that the transcript reads "inaudible" at times as a result, Plaintiff does not indicate whether or how that affected her pursuit of her claim. (Doc. 13 at 13-14.) "Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly develop the record, a court will remand only if the claimant can demonstrate that [she] was prejudiced . . . . To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination." *Czibor v. Astrue*, No. 12C 1678, 2012 WL 4361554, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2008)). Mere conjecture is insufficient. *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Since Plaintiff has alleged, at most, mere conjecture, I suggest this argument lacks merit.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/ *Charles E. Binder*
                                                      CHARLES E. BINDER
Dated: July 17, 2013                            United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: July 17, 2013                     By     s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder